UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| HDI GLOBAL SPECIALTY SE, | : | **Civil Action No.: 22-cv-01941** |
| Plaintiff, | : | **COMPLAINT** |
| -against- | : | |
| LA ESPIGUITA SOCCER, LLC, VICTOR ROMERO, and 1825 BRENTWOOD ROAD ASSOCIATES, LLC, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff HDI GLOBAL SPECIALTY SE ("HDI") by its attorneys, KEIDEL, WELDON

& CUNNINGHAM, LLP, 925 Westchester Avenue, Suite 400, alleges as follows:

### NATURE OF THE ACTION[1]

1.      In this action, HDI seeks various reliefs with regard to a policy of insurance, #:

HDGL 19000267 issued to Defendant, LA ESPIGUITA SOCCER, LLC. ("LES"), which was

effective from January 24, 2020 until January 24, 2021. ("Policy").

2.      HDI seeks Rescission with a declaration that the Policy is void *ab initio* for Fraud

and/or Material Misrepresentation and/or Breach of a Warranty in applying for the subject policy.

3.      It also seeks a declaration that it does not owe insurance coverage to LES or 1825

BRENTWOOD ASSOCIATES, LLC ("1825 Brentwood") in connection with any claims relating

to an underlying action entitled Victor Romero v. 1825 Brentwood Road Associates, LLC and La

Espiguita Soccer, LLC venued in the New York State Supreme Court; Suffolk County under Index

Number #: 620097/2020 ("Underlying Action"), due to a lack of coverage because of Fraud and/or

---

[1]      All allegations are on Information & Belief.

Material Misrepresentation and/or Breach of a Warranty in applying for the subject policy and/or Breach of the Policy's terms and conditions.

4.      HDI also seeks a declaration that HDI is entitled to withdraw its defense of LES and Brentwood in connection with the Underlying Action due to the lack of coverage.

5.      Further, HDI seeks a declaration that HDI is entitled to recover all of the legal fees it has expended to date for the defense of LES and Brentwood in the Underlying Action due to a lack of coverage.

### PARTIES

6.      HDI Global Specialty SE is a foreign insurance company that is owned by HDI Global, with a principal place of business in Hannover, Germany.

7.      HDI is licensed to issue policies of insurance in the State of New York in the Excess/Surplus Lines market administered by "ELANY".

8.      It issues policies to various insureds via various insurance programs, including to New York insureds.

9.      LA ESPIGUITA SOCCER LLC is a domestic Limited Liability Company created on August 2, 2006, (DOS entity #:3395576) with a principal place of business located at C/O Espiguita Academy, 1795 Brentwood Road, Brentwood, New York 11717.

10.     VICTOR ROMERO is an individual who, at all times herein and as alleged in the Underlying Action, was a resident of the State of New York, County of Suffolk.

11.     1825 BRENTWOOD ROAD ASSOCIATES, LLC, ("1825 Brentwood"), is a domestic Limited Liability Company created on June 29, 2009, (DOS entity#:3827813) with a principal place of business located at 444 Route 111, Suite 1, Smithtown, New York, 11787.

## JURISDICTION AND VENUE

12.     The Policy has a $1,000,000 per occurrence limit, which exceeds the jurisdictional amount of this court.

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs.

14.     Venue is appropriate in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391.

## FACTS

**A.     The Sports Insurance Program**

15.     Prior to the issuance of the policy to LES, Reel Media, LLC ("Reel Media"), a Massachusetts Managing General Agency ("MGA"), issued a primary master liability insurance policy on behalf of HDI to a Nevada company called SSEI Program Management, Inc. ("SSEI"), creating an "Insurance Program" for, targeted to, and limited to sports related insureds.

16.     An "Insurance Program" in this context means a mechanism under which participating members (who are homogeneous as to their business risks) are protected against designated losses through joint purchase of primary and/or excess insurance.

17.     Here, SSEI was the Policy Administrator. As is common, the Administrator is the Named Insured on the master policy, with each member receiving a Certificate indicating that they are also a Named Insured on the master policy and subject to its terms and conditions.

18.     Individual insurance brokers who have clients that fit into the underwriting threshold requirements can submit an application for consideration by the Insured for inclusion in the group and the issuance of a Certificate/policy to them.

19.     Reel Media handled the underwriting for the risks submitted for inclusion in the Program. Specifically, the applications and other submissions were made to SSEI, who submitted them to Reel Media as the Agent of HDI. Depending on the Underwriting Guidelines and criteria, Reel Media decided whether or not the applicant would be accepted into the Program and become an "Insured" of HDI.

**B.      LES Applies for Insurance**

20.     Prior to February 21, 2020, LES used the services of insurance broker Jupiter Cover Corp. ("Jupiter") to obtain insurance.

21.     Jupiter can be called the "Retail" and/or "Producing" Broker.

22.     For the purposes of insurance procurement, Jupiter was the "Agent" of LES.

23.     On February 21, 2020, LES submitted an application for insurance with regard to the SSEI Program. (**Exhibit "A"**).

24.     At Page 4, below center, the application asked the following question and LES gave the following Answer.

> **"Does the applicant use a waiver and release?        Yes**
>
> **Please note that the use of a waiver is mandatory for insurance coverage. For your protection we recommend having your waiver prepared /approved by your legal council (sic)."**
> *(Bold added).*

25.     On the last page of the application, the following appears along with the electronic signature of LES.

> **"DECLARATION**
> **IMPORTANT NOTICE**
>
> **Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance may result in an insurance claim being denied by the insurer.**
>
> **Declaration**

4

> **To the best of my knowledge and belief all statements made in this Application for Insurance are true. Signing of this document does not bind the Applicant to complete the insurance, but it is agreed that this Application shall be the basis of the contract, should a policy be issued.**
>
> **The customer has agreed electronically      Yes**

*(Bold added).*

26.      In addition to the Fraud and False Statement warnings, the application clearly states that the application becomes part of the policy/the contract of insurance if issued.

27.      Later that day, SSEI issued a Binder for LES. (**Exhibit "B"**).

28.      The binder contained multiple questions and warranties for the insured to answer and warrant as follows:

> **Waiver & Release System is in Place:**
> (We recommend that you keep a copy of the insured's waiver on file)
>
> ☑ I accept, on behalf of the Insured
>
> **Coverage Terms and Conditions:**
> I have read and agree to the terms and conditions for this coverage as specified in the Quote document.
> I understand that the quote document is a summation of the limits, terms, coverage, and conditions all of which are superseded by the Master Policy.
>
> ☑ I accept, on behalf of the Insured
>
> **Warranty & Disclosure:**
> I understand that the insurance company, in determining whether to provide insurance coverage, will rely on the information contained in this form and all other information being submitted. I hereby warrant, represent, and confirm that, to the best of my knowledge, all information provided is complete true and correct.
>
> ☑ I accept, on behalf of the Insured
>
> I further acknowledge that, I have reviewed all information provided with this enrollment form and understand the exclusions which apply, as well as the activities and operations for which coverage is not provided. The information I provided on this enrollment form becomes a part of the insurance contract.
>
> ☑ I accept, on behalf of the Insured
>
> I further acknowledge that, I have reviewed all information provided with this enrollment form and understand the exclusions which apply, as well as the activities and operations for which coverage is not provided. The information I provided on this enrollment form becomes a part of the insurance contract.

☑ I accept, on behalf of the Insured

29.     The application and binder were electronically signed by LES.

30.     Based on the Application, and as confirmed by the Binder, LES was accepted as a member of the Program.

31.     Had LES answered "No" to the "Waiver & Release" questions, it would have been immediately rejected for any further consideration for inclusion in the Program.

32.     On February 21, 2020, a Certificate was issued by SSEI to LES indicating that LES was covered for General Liability by HDI under the aforementioned Policy for the effective period indicated above. (**Exhibit "C"**).

33.     The Policy is attached as **Exhibit "D"**. It says, in pertinent part:

> "**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
> **2.   Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
> **c.     You and any other involved insured must:**
>
> **\*\*\***
>
> > **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
> >
> > **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."

34.     At all relevant times the Policy was in effect.

**C.     The Accident**

35.     It is alleged that, on or about December 5, 2020, Victor Romero was at the LES facility and slipped and fell on a wet condition. (**Exhibit "E", ¶27**).

**D.**     **The Underlying Action**

36.     By Summons and Complaint efiled on December 28, 2020, Mr. Romero brought the Underlying Action, which is a personal injury lawsuit against LES and the premises owner, 1825 Brentwood. (**Exhibit "E"**).

37.     The Underlying Complaint asserts a single cause of action for Negligence.

**E.**     **Tender and Reservation of Rights**

38.     LES forwarded the Underlying Action to Reel Media on or about April 1, 2021, and Reel Media subsequently forwarded the Underlying Action to ideal3, HDI's U.S.-based independent adjuster firm, on or about April 5, 2021.

39.     By letter dated April 21, 2021 from ideal3, HDI accepted the tender of the defense subject to a Reservation of Rights.

40.     HDI retained counsel to defend LES and has been defending LES to date.

**F.**     **Failure to Cooperate**

41.     Despite numerous attempts during the course of the litigation, LES has failed to cooperate with defense counsel retained by HDI to defend LES.

42.     Examples of LES's failure to cooperate with defense counsel in the defense of this matter include, but are not limited to, the following:

a.   Defense counsel sent a letter to LES, dated May 24, 2021, following up on several prior attempts to obtain a copy of its lease and contact information for its accountant. On July 28, 2021, defense counsel wrote another letter following up with LES regarding a copy of its lease and contact information for its accountant. Ultimately, defense counsel obtained the lease from the property owner after it was added as a party to the litigation.

b.  In a letter dated November 16, 2021, defense counsel requested that LES advise regarding dates that its principal was available for depositions. Defense counsel sent a follow-up letter on December 9, 2021, again requesting availability for deposition. After Claimant Romero's counsel noticed the Insured's corporate deposition for February 10, 2022, defense counsel sent yet another letter to LES, dated January 21, 2022, advising of this date and requesting LES's cooperation in scheduling and preparing for the deposition. Defense counsel sent another letter, dated February 7, 2022, advising the Insured that its lack of contact or response had caused the parties to move the Insured's deposition to February 22, 2022. Defense counsel sent a similar letter on February 14, 2022. The Insured did not appear for the February 22, 2022 deposition, which caused Claimant Romero's counsel to notice a motion seeking an order compelling LES to participate in depositions and an order, pursuant to 22 NYCRR 202.21(2), precluding LES from offering testimony at the time of trial.

**G.   Discovery of the Fraud/Material Misrepresentation/Breach of Warranty**

43.   During the course of the Underlying Action, it became known to HDI that LES committed Fraud and/or Material Misrepresentations and/or violations of the Warranty provisions and/or breach of the Policy's terms and conditions.

44.   This action followed shortly thereafter.

**AS AND FOR A FIRST CAUSE OF ACTION FOR RESCISSION**

45.   Plaintiff repeats and realleges all prior paragraphs as if more fully set forth at length herein.

46.     In applying for the subject insurance, LES represented and warranted that, prior to any individual gaining access to its premises, LES requires them to execute a "waiver and release".

47.     In the application, LES stated "YES" to that question.

48.     The application also put LES on notice that "**use of a waiver is mandatory for insurance coverage**."

49.     LES knew that its response had to be truthful and that knowingly presenting false information in the application is grounds for denial of a claim.

50.     LES also warranted that it had a Waiver & Release System in place.

51.     LES warranted that it understood that HDI was going to rely on the truth of the information contained in the application and Binding Confirmation in determining, at the underwriting stage, whether or not to accept LES as an insured.

52.     HDI relied on the truth of LES's representations in deciding to issue it a policy.

53.     At the time that LES stated that it used Waiver & Release Agreements and had a Waiver & Release System in place, it knew it did not.

54.     At the time that LES stated that it used Waiver & Release Agreements and had a Waiver & Release System in place, it knew it did not as to Mr. Romero.

55.     Had HDI known the truth, specifically that LES did not use Waiver & Release Agreements and did not have a Waiver & Release System in place, HDI would not have issued the policy to LES.

56.     Had HDI known the truth, specifically that LES did not use Waiver & Release Agreements and did not have a Waiver & Release System in place for all those who entered its premises, HDI would not have issued the policy to LES.

57.     The Fraud/Material Misrepresentation/Breach of Warranty's by LES as set forth above caused HDI to have to spend sums of money to defend LES and potentially indemnify them in the Underlying Action.

58.     The Fraud/Material Misrepresentation/Breach of Warranty's by LES has been, is, and will be prejudicial to HDI.

59.     HDI has no adequate remedy at law.

60.     **WHEREFORE,** HDI seeks a decision by this court under its equity powers rescinding the policy *ab initio*.

**AS AND FOR A SECOND CAUSE OF ACTION**
**FOR A DECLARATORY JUDGEMENT OF NO COVERAGE**

61.     Plaintiff repeats and realleges all prior paragraphs as if more fully set forth at length herein.

62.     HDI has been forced to provide defense and possibly indemnification coverage to LES on a policy that HDI would not have issued to LES has LES been truthful in applying for the subject insurance.

63.     **WHEREFORE,** HDI seeks a declaration by this court that:

    a)  HDI ***has*** no duty to defend LES going forward;

    b)  HDI ***had*** no Duty to Defend LES in the <u>Romero</u> action at all;

    c)  HDI is entitled to recover from LES all of the legal fees and expenses expended in the defense of LES in the <u>Romero</u> action;

    d)  HDI has no obligation to indemnify LES in the <u>Romero</u> action;

    e)  The subject policy is void, *ab initio*, due to the Fraud/Material Misrepresentation/Breach of Warranty; and

    f)  The decision by this court applies to any claim or potential claim under the subject policy.

## AS AND FOR A THIRD CAUSE OF ACTION
### FOR FRAUD IN THE INDUCEMENT

64.     Plaintiff repeats and realleges all prior paragraphs as if more fully set forth at length herein.

65.     In applying for the subject insurance, LES knowingly and with intent to defraud did commit fraud as to its answers and warranties regarding the use of Waiver & Release Agreements and Waiver & Release System, including for Mr. Romero.

66.     LES intended to induce HDI to issue a policy of liability insurance to LES that LES knew HDI would not have issued if LES had been truthful on this subject.

67.     HDI relied on LES's answers and LES counted on HDI relying on its answers in deciding to issue the Policy.

68.     HDI justifiably relied on those fraudulent answers in deciding to issue the subject Policy to LES.

69.     **WHEREFORE,** HDI seeks an order of the court that the subject policy is void, *ab initio*, due to the Fraud and that HDI has no, and never had any, defense obligation nor duty to indemnify LES for the Underlying Action or for any claim, suit, or action and for damages due to the fraud.

## AS AND FOR A FOURTH CAUSE OF ACTION
### FOR BREACH OF THE POLICY

70.     Plaintiff repeats and realleges all prior paragraphs as if more fully set forth at length herein.

71.     The application was part of the Policy.

72.     LES breached the terms and conditions of the HDI Policy by Fraud/Material Misrepresentation/Breach of Warranty as set forth above.

11

73.     Due to the breach, HDI no longer has any defense and/or indemnification duty to LES for any claim, suit, or action, including the Underlying Action.

74.     Due to the breach, HDI had no defense obligation to LES for any claim, suit, or action, including the Underlying Action.

75.     **WHEREFORE,** HDI is entitled to damages in an amount to be determined for the breach.

### AS AND FOR A FIFTH CAUSE OF ACTION
### FOR BREACH OF THE COOPERATION CLAUSE OF THE POLICY

76.     Plaintiff repeats and realleges all prior paragraphs as if more fully set forth at length herein.

77.     HDI acted diligently in seeking to bring about the cooperation of LES.

78.     HDI's efforts were reasonably calculated to obtain LES's cooperation.

79.     LES's attitude and lack of response, after its cooperation was sought, was one of willful and avowed obstruction.

80.     Thus, LES breached the Policy's "Cooperation Clause" by failing to assist in the defense of the Underlying Action.

81.     LES breached the Policy's "Cooperation Clause" by failing to respond to defense counsel's communications, which was required for mounting the defense of the Underlying Action.

82.     Due to the breach, HDI no longer has any defense and/or indemnification duty to LES for any claim, suit, or action, including the Underlying Action.

83.     Due to the breach, HDI had no defense obligation to LES for any claim, suit, or action, including the Underlying Action.

84.     **WHEREFORE,** HDI is entitled to damages in an amount to be determined for the breach.

## AS AND FOR A SIXTH CAUSE OF ACTION
### FOR A DECLARATION THAT THERE IS NO COVERAGE FOR 1825 BRENTWOOD

85.     Plaintiff repeats and realleges all prior paragraphs as if more fully set forth at length herein.

86.     In its Answer with Cross-Claims in the underlying action (**NYSCEF #: 35**), 1825 Brentwood makes various allegations that: (i) it was required to be insured under the subject Policy at issue herein, and/or (ii) that should be obtain a judgment against LES, it may be entitled to see recovery under the subject Policy.

87.     Any claim 1825 Brentwood may have to and under the subject Policy is dependent on the existence and enforceability of that Policy.

88.     Should this court find that the subject Policy issued to LES is a nullity, void *ab initio* due to and as per the allegations and causes of action hereinabove, then such a determination is also binding on 1825 Brentwood.

89.     **WHEREFORE,** HDI seeks a declaration by this court that a coverage determination in favor of HDI and against LES is binding on 1825 Brentwood.

**WHEREFORE**, HDI seeks the following relief:

        a.     Judgement on the First Cause of Action,
        b.     Judgement on the Second Cause of Action;
        c.     Judgement on the Third Cause of Action;
        d.     Judgement on the Fourth Cause of Action;
        e.     Judgment on the Fifth Cause of Action; and
        f.     Judgment on the Sixth Cause of Action; and
        g.     For such other and further relief as the Court deems just, equitable, and proper.

DATED:     White Plains, New York
              April 5, 2022

KEIDEL, WELDON & CUNNINGHAM, LLP

By:    **_Howard S. Kronberg_**
Howard S. Kronberg, Esq.
Justin R. Waytowich, Esq.
*Attorneys for Plaintiff*
*HDI GLOBAL SPECIALTY SE*
925 Westchester Avenue, Suite 400,
White Plains, New York 10604
Tel:    (914) 948-7000
Fax:    (914) 948-7010
Email: hkronberg@kwcllp.com
        jwaytowich@kwcllp.com

14